IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SRAM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-00492-SCJ |
| | ) |
| FOX FACTORY, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**PLAINTIFF SRAM, LLC'S REBUTTAL
IN SUPPORT OF THE COURT'S ORDER TO SHOW CAUSE**

## Introduction

Defendant Fox Factory, Inc. ("Fox") now admits that "***[h]ad FOX Inc. and counsel understood the correct facts and commitments to Georgia, we would not have argued that FOX Inc.'s principal place of business was not in Georgia***." (ECF No. 31 at 6 (emphasis added).) The facts and evidence of Fox's principal place of business (including Fox's own public statements and filings confirming Georgia as its principal place of business) were in front of Fox and its counsel at least as soon as SRAM filed its Memorandum in Opposition to Fox's Motion to Transfer. But instead of acknowledging these facts and this evidence and withdrawing its Motion, Fox doubled down on its misstatements of fact and frivolous legal arguments in its Reply.

Even now, Fox ignores the facts in its current attempt to disclaim knowledge that its principal place of business is in Georgia by blaming one in-house (now former in-house) counsel, David Haugen.  SRAM takes no position on the propriety of filing multiple declarations blaming an in-house lawyer,[1] but Fox's own filings undermine laying all the blame at Mr. Haugen's door and rebut Fox's claims of ignorance on both the factual and legal front.  Fox tells the Court that it "did not discover" certain now-admitted "error[s]" "until after receipt of the Court's Order" (ECF No. 31 at 6); however, do not list any such new evidence, and there was simply *no new evidence* provided by the Court's Order that was not equally available to Fox and its counsel when, almost a year earlier on April 17, 2023, SRAM filed the very twenty-six publicly available exhibits that the Court referenced to find that "Fox originally misrepresented the location of its principal place of business." (ECF No. 30 at 24.)

In short, even if Fox were somehow excused from not originally reviewing the *publicly available* information that its own executives signed and submitted to multiple state and federal agencies over the last five years when Fox filed its initial Motion to Transfer, Fox's Reply doubled down on its original, unsupported position even after such clear evidence was provided to Fox and its attorneys.  Fox's failure

---

[1] Mr. Haugen (who notably did not file a declaration) is referenced in blame some sixteen times over the twelve pages in Fox's Response.

2

to withdraw its motion following receipt of such evidence simply cannot "stand unsanctioned." (*Id.*)

Fox's Response to the Court's Order to Show Cause only further seems to exacerbate Fox's misconduct as it attempts to rewrite its Reply and suggest that the Court misread that filing, and that Fox's Reply did not suggest that its principal-place-of-business argument shifted from Fox, Inc. to the bike suspension unit. (*See, e.g.*, ECF No. 31 at 12.) Fox's Reply language, discussed further below, was clear and speaks for itself, supporting the Court's reading and concern that Fox's word choice was an apparently "deliberate" attempt to "obfuscate[] and obscure[] in an attempt to secure its favored forum[.]" (ECF No. 30 at 12 n.3.) Fox's desire to delay this case and try to move it to its preferred forum has now forced SRAM to spend countless hours responding to a frivolous motion, which was in turn used by Fox to obtain an unjustified stay of discovery in this case, further prejudicing SRAM. Sanctions are warranted.

## Argument

**I.     Rule 11 Employs an Objective Standard for Determining Whether Sanctions Are Warranted.**

"[A]n empty head but a pure heart is no defense" to a frivolous argument as "Rule 11 employs an objective standard in finding frivolous arguments sanctionable[.]" *Lee v. Criterion Ins. Co.*, 659 F. Supp. 813, 822 (S.D. Ga. 1987) (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)); *Brown v. Brock*,

3

No. 5:04CV339(DF), 2005 WL 1843266, at *2 (M.D. Ga. Aug. 3, 2005). As such, "[a]n attorney cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019); *see also Xped LLC v. Entities Listed on Exhibit 1*, No. 21 CV 6237, 2023 WL 5748350, at *11 (N.D. Ill. Sept. 6, 2023) (finding the plaintiff's misrepresentation about its principal place of business was "sanctionable under the Court's inherent power").

## II. Fox's Decision to Ignore the Evidence Compiled and Attached to SRAM's Response in Opposition to Fox's Motion to Transfer Does Not Excuse Its Conduct.

In SRAM's Response in Opposition to Fox's Motion to Transfer filed on April 17, 2023 (ECF No. 23), SRAM exhaustively put forth evidence compiled from purely publicly available information (*i.e.*, equally, if not *more*, available to Fox and its counsel) demonstrating why Fox's principal place of business is located in Georgia. (*See* ECF Nos. 23-02 – 23-27.) Yet, even after presented with the results of SRAM's research, attached as Exhibits A through Z to Michael Hickey's declaration (and detailed therein), in April, 2023, Fox did not withdraw its motion. Rather, Fox did the opposite of what it now tells the Court it would have done. Fox maintained its position, ignored those facts, and continued to argue for a transfer of venue rather than withdrawing its motion in recognition of the clear lack of legal and factual support therefor. (*See* ECF Nos. 26, 26-1.)

Tellingly, Fox *now* states that "[a]t the time FOX Inc. filed its motion and reply, counsel had **no reason** to question Mr. Haugen's stated belief that FOX Inc.'s principal place of business was Scotts Valley" and that "***[h]ad FOX Inc. and counsel understood the correct facts and commitments to Georgia, we would not have argued that FOX Inc.'s principal place of business was not in Georgia***." (ECF No. 31 at 4, 6 (emphasis added).)  Yet, that is exactly the opposite of what Fox actually did ***after*** purportedly reading and understanding SRAM's Response in Opposition (ECF No. 23) and related declaration and exhibits.  ***Knowing all the exact same facts*** it now claims would have prevented it from wrongly asserting its principal place of business was in California, Fox nonetheless maintained its Motion and filed its Reply.  (ECF No. 26.)  Fox had every reason to question its prior claims by simply reviewing the evidence attached to SRAM's Response in Opposition (ECF No. 23).  Under Rule 11's *objective* standard, that conduct is sanctionable.

The clear fact is that Fox and its counsel had all the information they needed to understand "the correct facts" a year ago and certainly had more than enough "reason to question" reliance on nothing but Mr. Haugen's "stated belief."  For example, even if Fox's counsel did not want to rely on the argument set forth in SRAM's Opposition on pages 9–10 describing the millions of dollars Fox Factory, Inc. received from Georgia (ECF No. 23 at 9–10), it could have read *for itself* the many agreements that Fox Factory, **Inc.** signed with the Gainesville and Hall County

Development Authority and that were attached as Exhibit H to Mr. Hickey's Declaration (or presumably in its own corporate files). (ECF No. 23-09.) Not only were the agreements themselves attached to Mr. Hickey's Declaration, they were explicitly and repeatedly described in Mr. Hickey's Declaration—***including identification of the signing parties: Fox Factory, Inc.*** and Gainesville and Hall County Development Authority. (ECF 23-1 ¶ 10.a.–10.g.) As such, there should be no excuse for signing a brief that incorrectly stated that "FOX Factory ***Holding Corp.*** received some tax/financing benefits from the State of Georgia" when Fox knew at that point that Fox Factory, **Inc.** was indisputably the signatory and recipient of those agreements and funds. (ECF No. 26 at 4 n.1.)

> As this Court correctly recognized by its *own* review of this very evidence:
>
> FOX attempts to distance itself from SRAM's showing that it has obtained beneficial financing and tax treatment from Georgia by strengthening its Georgia presence and moving its international headquarters here. FOX contends that its parent company (FOX Factory Holding Corp.) – not FOX – has received those benefits. ***The record belies this assertion***.

(ECF No. 30 at 9 (referring to SRAM's Exhibits A, D, and F–H).)

Again, "[a]n attorney cannot avoid sanctions by claiming subjective good faith if a ***reasonable inquiry into the facts*** and law would have revealed the frivolity of the position." *McGreal*, 928 F.3d at 560 (emphasis added). Here, Fox did not even have to do any work to make a reasonable inquiry because SRAM laid the facts

before it.  Fox cannot claim that reliance on the say-so of Mr. Haugen[2] was a "reasonable inquiry" when its counsel had in their hands the very facts and agreements that disproved their assertion that only Fox's parent company received the tax and financing benefits from the State of Georgia.  The many *years*-worth of filings with multiple Secretaries of State identifying Georgia as Fox's principal place of business likewise disproved Fox's and Mr. Allinger's statement that its principal

---

[2] SRAM also notes that Fox's attempt to lay all the blame wholly upon Mr. Haugen is not supported.  While Fox selectively recounts snippets of discussions Fox's counsel claims they had with their client in their filed declarations, SRAM notes that, of the fourteen annual reports filed with various Secretaries of State identifying Georgia as Fox Factory, Inc's principal place of business, Mr. Haugen signed *only one*.  (*See* ECF Nos. 23-02–23-04.)  Mr. Merchant, who filed a declaration that joined in blaming Mr. Haugen for certain "inconsistencies," signed three.  (*See id.*; *see also* ECF No. 31-2 ¶ 6.)

Mr. Merchant, who signed the March 29, 2023 submission to the Georgia Secretary of State (identifying Georgia as Fox Factory, Inc.'s principal place of business), also signed the *California* submission **on that same day** with the inconsistent representation that Fox now relies on to support its argument that California was its principal place of business. (*Compare* ECF No. 23-2 at 6, *with* ECF No. 31-4.)  As such, while Mr. Merchant attempts to blame Mr. Haugen for the "decentralized process" that he believes led to the error in Fox's briefing, Mr. Merchant most recently created the inconsistency.

Laying the blame on Mr. Haugen is even more questionable given that he was ***not*** the client representative that submitted declarations in support of Fox's Motion to Transfer briefing—Mr. Wes Allinger was.  (*See* ECF Nos. 22-2, 26-1.)  Fox and its counsel clearly had access to other executives at Fox.  Mr. Allinger did not submit a declaration in support of Fox's current brief in response to the Show Cause Order.

place of business was in Scotts Valley, California[3] and not Georgia. (*Compare* ECF No. 22-1 at 1, 3, 13 and ECF No. 22-2 ¶ 2, *with* ECF Nos. 23-02–23-04.)

As the *McGreal* court noted, the "duty to conduct a reasonable investigation into the law and facts . . . ***renews at each stage of the litigation*** . . . . ***In fact, the duty compounds***." 928 F.3d at 560 (emphasis added). Thus, what may be a reasonable belief at the pleadings stage, may not be reasonable after discovery is completed. *Id.* Here, even if Fox's purported reliance on Mr. Haugen's unsupported (and now admittedly incorrect) legal conclusions was reasonable when it filed its Motion to Transfer,[4] it unquestionably was ***not*** reasonable after SRAM filed its

---

[3] Fox's counsel points to Fox's Statements of Information filed with the California Secretary of State shortly before its Reply as justifying its claimed "misunderstanding" about Fox's actual principal place of business. (ECF No. 31-3 ¶ 4.) However, such reliance only shows the selective nature of Fox's "investigation"—SRAM had put in front of Fox several years-worth of statements ***by Fox executives*** to the Secretaries of State for Georgia, North Carolina, and Colorado, all identifying ***Georgia*** as Fox's principal place of business. (ECF Nos. 23-02 – 23-04.) Rather than investigating those facts, Fox's counsel chose, in the best light, to solely and blindly rely on the outlier – the filing with the California Secretary of State.

[4] The decision to rely solely on Mr. Haugen's claimed conclusions at the time of filing Fox's Motion to Transfer is itself questionable. Fox attaches as an exhibit to its Response (ECF No. 31-06), Fox's filings in the California/Colorado litigation with SRAM to suggest Fox "believed" its principal place of business was in California. Fox, however, does not attach SRAM's response to those filings (made long before the filing of Fox's Motion to Transfer here), in which SRAM told Fox that such representations were incorrect, with SRAM pointing out that, although Fox alleged otherwise, Fox's principal place of business is in "***Georgia (where its corporate headquarters is actually located as claimed in FOX's corporate material)***." (*See Fox Factory, Inc. v. SRAM*, Case No. 2:22-cv-04805-DOC-JC, ECF

Opposition and handed Fox and its counsel a veritable mountain of evidence showing that their assertion was incorrect. Fox should have withdrawn its Motion to Transfer at that time, after SRAM's Response in Opposition. Instead, Fox simply ignored all the publicly available documents SRAM submitted to the Court and then doubled down on its claim that California was its principal place of business. Only after the Court's Order called it out (based on the very same information Fox had at the time of Reply) did Fox claim it was just one in-house lawyer's mistake and everyone else "believed" he knew best. While Mr. Haugen's recent departure from Fox may have created a convenient option for Fox's attempt to avoid responsibility here, he was neither the sole attorney nor sole contact at Fox, and there is no real excuse for Fox's apparent failure to read the declaration and publicly available documents SRAM filed with its Opposition.

### III. Fox Presented a Frivolous Legal Argument to This Court Regarding Its Principal Place of Business Based on the Location of the Bike Suspension Business.

Counsel should know that the United States Supreme Court has held a company's "principal place of business" refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities" and "should

---

No. 16-1, p. 1, attached hereto as **Exhibit 1**.) So, before Fox even filed its Motion to Transfer here, it knew that SRAM had filed papers reminding it that Fox's principal place of business is in Georgia.

normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

As both the *Hertz* Court and this Court have held: "a corporation cannot have multiple principal places of business at a given point in time; by definition, a corporation only has one such place." (ECF No. 30 at 11 (citing *Hertz Corp.*, 559 U.S. at 92).); *see also Hertz Corp.*, 559 U.S. at 93 ("The word 'place' is in the singular, not the plural. The word 'principal' requires us to pick out the 'main, prominent' or 'leading' place. … A corporation's 'nerve center,' usually its main headquarters, is a **single place**.") (emphasis added). This Court further noted that it "is not aware of a legal construct under which a single aspect of a corporation is entitled to its own 'principal place of business,' and FOX does not provide any authority to support such a construct." (*Id.* at 12.)

Fox did not provide any such authority because it does not exist. Rather, it is *well*-established that "[u]nincorporated divisions of a company take on the corporate parent's principal place of business," *e.g.*, *Peich v. Flatiron W., Inc.*, No. 516CV00540ODWDTB, 2016 WL 6634851, at *2 (C.D. Cal. Nov. 9, 2016), and the "location of a dominant division of a company" does *not* determine the company's principal place of business. *E.g.*, *Mears v. McNeil-PPC, Inc.*, No. CIV.A. 95-3820, 1995 WL 684862, at *1 (E.D. Pa. Nov. 15, 1995) ("This Court cannot place [defendant's] principal place of business in Pennsylvania due to the location of a

10

dominant division of a company. This division is not a subsidiary and is not by law considered a separate entity from the parent corporation."); *see also Coghlan v. Blue Cross Blue Shield of Texas*, No. CIV.A. H-12-2703, 2013 WL 150711, at *3 (S.D. Tex. Jan. 14, 2013) ("The Court must agree with Defendant that the principal place of business of BCBS is **not relevant because it is an unincorporated division**.").[5]

Instead, in its Reply, Fox asserted without legal support that the case should be transferred because "FOX's principal place of business ***for its accused bike suspension (forks and shocks) business*** . . . is indeed in Scotts Valley, California, and not in Georgia." (ECF No. 26 at 1.)  So, rather than acknowledging the inaccuracy of its prior statement suggesting that only Fox Factory ***Holding*** Corp. is based in Georgia (*see* ECF No. 22-2 ¶ 2 ("***Although the principal executive office of FOX's corporate parent, FOX Factory Holding Corp., is in Duluth, Georgia, Defendant FOX is based in Scotts Valley, California***")), Fox doubled down on its argument and attempted to "artfully maneuver out of a corner" by tacitly shifting the

---

[5] Fox is well aware of the fact that divisions are not separate business entities that may sue or be sued (or which dictate principal-place-of-business findings).  For example, in *Offendel v. Ford Motor Co., et al.*, both Fox Factory, Inc. and "Fox Factory Performance Vehicle Development" were named as defendants in certain litigation in New York.  Case No. 611069/2023 (Sup. Ct. of N.Y., Nassau County).  In response to the Complaint, Fox filed a Verified Answer, stating that "Fox Factory Performance Vehicle Development is not an existing business entity" and therefore only answered on behalf of Fox Factory, Inc.  (*Id.* at Doc. No. 10, Defendant Fox Factory, Inc.'s Answer, attached hereto as **Exhibit 2**, at 1.)

inquiry from Fox, Inc. to Fox, Inc.'s "bike suspension business." (*See* ECF No. 30 at 24.)

As the Court and case law recognize, that shift to focus exclusively on Fox's "bike suspension business" to determine the entire company's principal place of business is ***not*** supported by any case law whatsoever, but rather is instead directly rebutted thereby. So, now, after being challenged by the Court, Fox once again attempts to rewrite and reframe its prior arguments. Specifically, in its Order, the Court found that Fox's attempt to shift the focus to "FOX's bike suspension business" was an "attempt[] to artfully maneuver out of the corner." (ECF No. 30 at 24.) In response, Fox implicitly tells this Court that its reading of Fox's argument is wrong. (ECF No. 31 at 12 (arguing that "[r]espectfully, the reply did state that 'FOX's opening brief correctly stated that FOX is a California corporation having its principal place of business in Scotts Valley, California'" and suggesting that Fox was merely "emphasiz[ing] the center for the day-to-day business of FOX Inc.'s bike suspension business").)

Fox cannot credibly walk back its frivolous legal argument. After initially suggesting that Fox's only contact with Georgia was through its "corporate parent (*see, e.g.*, ECF No. 22-1 at 3 ("Although the principal executive office of ***FOX's corporate parent***, FOX Factory Holding Corp., is in Duluth, Georgia, Defendant FOX is based in Scotts Valley, California") (emphasis added)), Fox then attempted

12

to "artfully maneuver" from that misstatement by shifting the focus to an unincorporated business unit on Reply. The shift in focus to a single business group was palpable throughout the entire Reply:

- "[T]he record fully supports FOX's requested transfer because FOX's principal place of business *for its accused bike suspension* (forks and shocks) business, and the location of its witnesses, is indeed in Scotts Valley, California, and not in Georgia." (ECF No. 26 at 1 (emphasis added).)

- "FOX'S PRINCIPAL PLACE OF BUSINESS *FOR ITS BICYCLE SUSPENSION BUSINESS* IS IN SCOTTS VALLEY, CALIFORNIA, AND NOT IN GEORGIA" (*Id.* (emphasis added).)

- "For all these reasons, Scotts Valley, not Georgia, 'is the nucleus or nerve center for *FOX's bike suspension business*.' Accordingly, under *Hertz*, FOX's principal place of business *for the bike suspension business* is in Scotts Valley, not Georgia." (*Id.* at 4 (emphasis added).)

- "SRAM's repeated references and citations to FOX's corporate filings to the Secretaries of State —which correctly identify FOX's "Principal Office Address" as Braselton or Duluth, Georgia—are *irrelevant* to the present inquiry regarding FOX's "nerve center," i.e., *its principal place of business, for the bike suspension business*." (*Id.* (emphasis added).)

- "[H]ere FOX's identification of the Georgia offices as 'Principal Office' in its corporate filings is not sufficient to establish it as a 'nerve center' for *FOX's bicycle suspension business*." (*Id.* at 5 (emphasis added).)

- "<u>FOX's principal place of business *for the bicycle suspension business* is in Scotts Valley, California.</u>" (*Id.* (emphasis added, underlining in original).)

- "[N]or is this District home to FOX's *bicycle suspension business*." (*Id.* at 7 (emphasis added).)

13

- "FOX's principal place of business *for the bicycle suspension business* is in Scotts Valley, California, not in Georgia." (*Id.* at 12 (emphasis added).)

- "[T]his District is not home to FOX's *bicycle suspension business*." (*Id.* at 14 (emphasis added, underlining in original).)

The Court's reading of that Reply was correct, and Fox cannot rewrite it now to avoid sanctions: Fox was frivolously arguing that a transfer motion could be based on the principal place of business *of an unincorporated business unit*, which, as set forth above, has been roundly rejected by any court that has considered the question.

Indeed, as this Court recognized, Fox's business enterprise "encompass[es] much more than its 'bike suspension business'" and Fox's own allegations confirm it designs and develops shock absorbers and racing suspension products for "motorcycles, ATVs, UTVs, and off-road cars, trucks, and SUVs." (ECF No. 30 at 12 n.4.)  Surely Fox, who now admits it employs over one thousand employees and who wrote the checks to build a Georgia facility funded from Georgia tax dollars, "understood the correct facts and commitments to Georgia."  Yet, that did not prevent Fox from claiming that Fox Factory, Inc. did not maintain its principal place of business in Georgia (even after such facts had been laid at its feet by SRAM's compilation of such information in its Response in Opposition).  (*Id.* at 6.)

Surprisingly, even after the Court's Order, Fox continues to assert that its "choice of venue clause selecting Atlanta for product liability suits is not inconsistent with FOX Inc.'s belief that it would be less convenient for FOX's witnesses from

14

California (i.e., engineers and salespeople based out of Scotts Valley) to travel to Georgia to defend this patent infringement action." (ECF No. 31, at 8.)  It is hard to understand how Fox can still take the position that its corporate headquarters is an inconvenient forum *for Fox* when it forces all of its customers, from all over the country (including California), to come to Georgia and litigate complaints about these very products in this very venue.

In short, the Court's reading of Fox's Reply (and related materials) was not mistaken.  As the Court rightly concluded, "FOX's silence and its selective speech" cannot stand unsanctioned.  (*See* ECF No. 30 at 24.)

## **Conclusion**

Fox's decision to double down on misrepresentations even after being presented with evidence of its falsity caused this Court to waste judicial resources, forced SRAM to expend unnecessary litigation costs, and significantly delayed this case.  Accordingly, for the foregoing reasons discussed herein, SRAM respectfully requests that this Court impose sanctions that it finds just and appropriate in light of the circumstances.

Dated:  April 3, 2024

Respectfully submitted,

**KING & SPALDING LLP**

By:  /s/   Holmes J. Hawkins III
Holmes J. Hawkins III
Georgia Bar No. 338681
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Email:  HHawkins@KSLAW.com

Richard B. Walsh, Jr. (*pro hac vice*)
Michael J. Hickey (*pro hac vice*)
Sarah A. Milunski (*pro hac vice*)
**LEWIS RICE LLC**
600 Washington Ave., Suite 2500
St. Louis, Missouri  63101
Telephone:  (314) 444-7600
Email:       rwalsh@lewisrice.com
             mhickey@lewisrice.com
             smilunski@lewisrice.com

*Attorneys for Plaintiff SRAM, LLC*

## **CERTIFICATE OF FONT COMPLIANCE**

Undersigned counsel hereby certifies that the forgoing has been prepared with one of the font and point selections approved by the Court in L.R. 5.1, Times New Roman 14 point.

By: /s/   Holmes J. Hawkins III