**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SRAM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:23-cv-00492-SCJ |
| | ) | |
| v. | ) | |
| | ) | |
| FOX FACTORY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT FOX FACTORY, INC.'S REPLY TO SRAM'S RESPONSE
TO THE COURT'S ORDER TO SHOW CAUSE WHY SANCTIONS ARE
NOT APPROPRIATE**

# TABLE OF CONTENTS

I.     Introduction.................................................................................................1

II.    FOX Inc. Did Not Knowingly Misrepresent its PPB ....................................2

       A.    Scotts Valley was FOX Inc.'s PPB for Many Years.............................2

       B.    FOX Inc. Did Not Try to Dodge the Truth in its Reply.......................3

       C.    FOX Inc. Apologizes for Its Mistakes Regarding Its Bond
             Agreements with Georgia and Its PPB....................................................4

III.   FOX Inc.'s Motion and Reply Were Not Frivolous; There Were
       Valid Reasons for Its Request to Transfer Even Considering its
       Duluth PPB ...................................................................................................6

       A.    FOX Inc. Had Legitimate Reasons to Request Transfer
             Aside from Its PPB...............................................................................6

       B.    FOX Inc.'s PPB Was Not Determinative, as SRAM
             Contends ................................................................................................8

IV.    SRAM's Opposition Exhibits Did Not Alter FOX Inc.'s
       Assessment of the "Nerve Center" Test for PPB at the Time ......................9

       A.    Most of SRAM's Exhibits Were Directed to Issues
             Peripheral to the "Nerve Center" Assessment ...................................10

V.     FOX Inc.'s Mistakes Are Not Sanctionable Conduct ................................11

       A.    Sanctions Would Require a Finding of Bad Faith or Acts
             "Tantamount to Contempt".................................................................11

       B.    FOX Inc.'s Actions Were Not in Bad Faith or "Tantamount
             to Contempt," and It Has Taken Corrective Actions ..........................13

       C.    SRAM's Rule 11 Cases Are Inapposite ..............................................15

VI.    Conclusion ..................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown v. Brock*,
   Case 1:23-cv-00492-SCJ, 2005 WL 1843266 (M.D. Ga. Aug. 3,
   2005) ..................................................................................................................15

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...........................................................................................12

*Elite Integrated Med., LLC v. New World Commc'ns of Atlanta, Inc.*,
   No. 1:19-CV-5214, 2021 WL 1663444 (N.D. Ga. Apr. 28, 2021) ...................10

*Faulkner v. Loftus*,
   No. 16-CV-02432, 2018 WL 11181980 (N.D. Ill. Mar. 30, 2018),
   aff'd, 775 F. App'x 245 (7th Cir. 2019) .....................................................13, 14

*Fireman's Fund Ins. Co. v. Comtran Grp., Inc.*,
   No. 1:13-CV-1164, 2013 WL 12064285 (N.D. Ga. Oct. 7, 2013)......................7

*Glob. Touch Sols., LLC v. Toshiba Corp.*,
   109 F. Supp. 3d 882 (E.D. Va. 2015) .................................................................8

*Kaplan v. DaimlerChrysler, A.G.*,
   331 F.3d 1251 (11th Cir. 2003) ..................................................................12, 15

*Lee v. Criterion Ins. Co.*,
   659 F. Supp. 813 (S.D. Ga. 1987) ....................................................................15

*Logopaint A/S v. 3D Sport Signs SI*,
   163 F. Supp. 3d 260 (E.D. Pa. 2016)................................................................13

*McGreal v. Vill. of Orland Park*,
   928 F.3d 556 (7th Cir. 2019) ............................................................................15

*Merrimack Mut. Fire Ins. Co. v. Omega Flex, Inc.*,
   569 F. Supp. 3d 68 (D. Mass. 2021).................................................................10

*Noetic Specialty Ins. Co. v. N. Carolina Mut. Wholesale Drug Co.*,
 453 F. Supp. 3d 842 (E.D. Va. 2020) ....................................................................7

*Peer v. Lewis*,
 606 F.3d 1306 (11th Cir. 2010) ...........................................................................12

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
 851 F.3d 1218 (11th Cir. 2017) ...........................................................................12

*Schelfo v. Tricam Indus., Inc.*,
 No. 8:14-CV-2454, 2014 WL 12621559 (M.D. Fla. Nov. 26, 2014) ...............10

*Sciarretta v. Lincoln Nat. Life Ins. Co.*,
 778 F.3d 1205 (11th Cir. 2015) ...........................................................................12

*Wesely v. Churchill Dev. Corp.*,
 99 F.3d 1141 (6th Cir. 1996) ...............................................................................13

*Wylie v. Red Bull N. Am., Inc.*,
 627 Fed. App'x. 755 (11th Cir. 2015) .................................................................10

*Xped LLC v. Entities Listed on Exhibit 1*,
 No. 21-CV-6237, 2023 WL 5748350 (N.D. Ill. Sept. 6, 2023).........................15

## Other Authorities

15 Fed. Prac. & Proc. Juris (Wright & Miller) § 3849 (4th ed.)............................8, 9

## I.    Introduction

FOX Inc. did not intentionally misrepresent the beneficiary of its bond transaction or its principal place of business ("PPB") in its motion to transfer or its reply. Dkt. 31-3, ¶¶4-8, 10, 12-13; Dkt. 31-1, ¶¶2-4. FOX Inc. again apologizes for its mistakes but never intended to mislead the Court or anyone regarding PPB. FOX Inc.'s business is now spread across multiple states, with distinct and substantial business decision-making and operations occurring in both Georgia and California. As a result, FOX Inc.'s legal assessment of its "nerve center"/PPB required weighing and balancing different facts and legal authorities that did not all point in one direction. FOX Inc. weighed and balanced those factors in good faith. Its mistakes about the beneficiary of the bond transaction, and ergo about FOX Inc.'s PPB being in Duluth, were honest mistakes that were not realized until after receipt of this Court's Order. Dkt. 31-3, ¶10; Dkt. 31-1, ¶¶2-4.

SRAM erroneously contends that FOX Inc. could not have filed or maintained a good faith motion to transfer given its PPB is in Duluth, but that is incorrect. FOX Inc. had valid reasons to request transfer under the case law, even with its PPB in Duluth. Courts consider at least nine factors in deciding motions to transfer for convenience and interests of justice. Moreover, cases have stated that the most significant factor is the center of gravity of the patent infringement allegations,

which this Court agreed is California, and additional facts and considerations also supported FOX Inc.'s motion and reply (even if FOX Inc. had earlier determined that its PPB is now in Duluth).

FOX Inc. respectfully submits that its mistakes do not rise to legally sanctionable acts and that the Court should find that sanctions are not appropriate.

## II.    FOX Inc. Did Not Knowingly Misrepresent its PPB

### A.    Scotts Valley was FOX Inc.'s PPB for Many Years

FOX Inc. and Finnegan have identified FOX Inc.'s PPB as Scotts Valley, California in a number of prior cases, and restating that same assessment in FOX Inc.'s motion and reply in this case was not bad faith or an attempt to mislead anyone. Dkt. 31-3, ¶5. Finnegan has been outside intellectual property counsel to FOX Inc. for years, and Scotts Valley is where we have always met with FOX Inc.'s executives, representatives and witnesses for this and several other cases; we have never been to any FOX facilities in Georgia. Bhattacharyya Reply Decl., ¶2; McCauley Reply Decl., ¶3. Although we knew that in recent years FOX had moved some of the company's power vehicle manufacturing into Georgia, our good faith assessment when drafting the motion and reply was that as between Georgia and California, Scotts Valley was best identified as the "nerve center" for FOX Inc. (which we have since corrected/withdrawn). Bhattacharyya Reply Decl., ¶2;

McCauley Reply Decl., ¶2. That assessment was based on, for example: Scotts Valley continued to be the home of FOX Inc.'s mountain bike business (research, design, development, testing, marketing, and sales); several executives in the bike and Power Vehicle Group (such as the President of Power Vehicle Group Business and Corporate Strategy (now the President, Aftermarket Applications Group), the Executive Vice President of the bike suspension group, and the interim CFO) were based in Scotts Valley; much of the PVG sales team was based in Scotts Valley, as were certain PVG engineers; and Scotts Valley is the location for Mountain Bike OEM sales, Power Sports sales, Power Sports OEM sales, and Power Sports international sales. Dkt. 31, ECF pp. 5-8. Communications with FOX Inc. were consistent with that understanding that Scotts Valley was the PPB until shortly after the Court's Order. Dkt. 31-3, ¶¶ 4, 10.

### B.    FOX Inc. Did Not Try to Dodge the Truth in its Reply

FOX Inc. did not intend to mislead or dodge the truth about its PPB in its reply. Dkt. 31-3, ¶13. Nor did FOX Inc. intend to imply that its PPB was Scotts Valley solely because the bike suspension business is based there. *Id*.; *Cf.* Dkt. 30, 10-11. Rather, FOX Inc. thought it was appropriate to focus on the center of gravity of the accused infringing activity, which is generally a predominant factor for courts deciding transfer motions in patent infringement cases, and that is why FOX Inc.

discussed the PPB of the bike suspension business. Dkt. 31-3, ¶13. In retrospect, FOX Inc. understands that referring to the bike suspension business's PPB was incorrect and may have led the Court to believe that FOX Inc. was trying to evade the question of its PPB, but FOX Inc.'s intension was not to dodge the truth about its PPB (as the first page of the reply already stated that FOX Inc.'s PPB was in Scotts Valley). *Id*. Instead, we meant to draw attention to the fact that the alleged infringing activities were related to the bike suspension business, which was based in Scotts Valley. *Id.* FOX Inc. understands that different terminology, such as "home" or "center," should have been used to refer to the bike suspension business and apologizes for not doing so. *Id.* We also regret that the reply brief did not state more clearly FOX Inc.'s reasonable belief (at that time) that the **company's** PPB under the "nerve center" test remained in Scotts Valley. *Id*.

### C.  FOX Inc. Apologizes for Its Mistakes Regarding Its Bond Agreements with Georgia and Its PPB

FOX Inc. again sincerely apologizes for its mistakes regarding the beneficiary of its bond agreement (and related agreements) with Georgia entities (included in Exhibit H to the Hickey Declaration (Dkt. 23-9)). Finnegan, FOX Inc.'s litigation counsel for this case, specializes in intellectual property law; Finnegan does not practice corporate or tax law, and never represented the FOX entities in any of their complex corporate or tax matters, or their complex bond and other agreements with

the State of Georgia. Bhattacharyya Reply Decl., ¶3. But unlike Finnegan, FOX Inc.'s and FOX Hold Co.'s former acting general counsel from 2007 through 2021, David Haugen, was intimately involved and familiar with FOX's expansion into Georgia. *Id*. Mr. Haugen was also in charge of this litigation until December 2023. *Id*. Finnegan reviewed Exhibit H (Dkt. 23-9), but given the complex nature of the agreements and interrelationships between FOX Hold Co. and FOX Inc., Finnegan believed it was reasonable to consult and rely upon Mr. Haugen's experience and expertise on the subject. *Id*. Mr. Haugen advised the bond agreement was for the benefit of FOX Hold Co., not FOX Inc., as was stated in the footnote 1 of FOX Inc.'s reply supporting it is motion to transfer (since corrected). *Id*. FOX Inc. is not unfairly scapegoating Mr. Haugen; we are instead explaining how and why the mistake was made.

At the time FOX's motion and reply were filed, Finnegan relied in good faith on Mr. Haugen's assessments of the bond transaction and also FOX Inc.'s PPB. Moreover, FOX Hold Co.'s 8-K included a summary that identified both FOX Hold Co. and FOX Inc. as involved in the execution and accrual of benefits of the bond transaction. The 8-K summary states (bracketed text added for clarity):

> On June 1, 2020, Fox [Inc.] finalized a PILOT Agreement (the "PILOT Agreement") between the Issuer and Fox, for certain ad valorem tax benefits provided by the Issuer to Fox on the Project Facility. **The benefits are subject to partial or full reduction based on the <u>Company's [FOX Hold</u>**

> **Co.'s] performance against certain criteria, including capital investment of $60 million in the Project Facility by December 31, 2022, creation and retention of a specified number of jobs at the Project Facility by March 31, 2025, and the establishment of Fox's international headquarters at the Project Facility or another certain real estate site in Gainesville, GA by December 31, 2026.**

Dkt. 23-9 at 3 (emphases added). Thus, the 8-K indicated that FOX Hold Co. was indeed involved in the bond transaction, which appeared consistent with Mr. Haugen's assessment at the time. And an EDGE agreement not mentioned or attached to the 8-K similarly indicates that FOX Hold Co. initiated the bond transaction with Georgia (Bhattacharyya Reply Decl., Ex. E), which may explain Mr. Haugen's mistaken statement that FOX Hold Co. was the beneficiary of the bond agreement. The complex interrelationships between the FOX entities and the nature of the bond transaction also demonstrates that counsel's reliance on Mr. Haugen for the facts of the bond transaction was not unreasonable under the circumstances.

## III.   FOX Inc.'s Motion and Reply Were Not Frivolous; There Were Valid Reasons for Its Request to Transfer Even Considering its Duluth PPB

### A.   FOX Inc. Had Legitimate Reasons to Request Transfer Aside from Its PPB

SRAM's response argues as though FOX Inc.'s PPB is the sole or determinative issue for a Section 1404(a) motion, but that is not the law. Instead, the Court separately weighs at least nine different factors to decide a Section 1404(a)

motion (*see* Dkt. 30 [Court's Order] at 5 (citing nine factors)), and here, the Court agreed that a number of facts and factors supported FOX Inc.'s request. For example:

- As the Court found, "the Northern District of California is the locus of operative facts, and thus, this factor weighs in favor of transfer." Dkt. 30 at 22.

- As the Court found, "in view of the efficient forum the Northern District of California provides for the adjudication of patent disputes, the Court is persuaded that trial efficiency favors a transfer." Dkt. 30 at 23.

- None of the expected witnesses for either party works or lives in Georgia; all will have to travel to Georgia for trial (from Colorado, California, or Chicago). But California, "as the homebase of FOX's three key employee witnesses, is more convenient for FOX's witnesses." Dkt. 30 at 18. The Court also did not accept SRAM's assertions that FOX's CEO or CLO are witnesses or that this Court is more convenient than the NDCA. *Id*. at 16-17.

- This is not SRAM's home forum.[1]

---

[1] On this last point, FOX Inc. understood that when a patent owner files an infringement case not in its home forum, and the center of the accused infringing activity is elsewhere (as here), courts generally give plaintiff's preference less deference and often transfer. *E.g.*, *Fireman's Fund Ins. Co. v. Comtran Grp., Inc.*, No. 1:13-CV-1164, 2013 WL 12064285, at *5 (N.D. Ga. Oct. 7, 2013) (transferring case under Section 1404(a) where plaintiffs filed suit outside their home forums and the events at issue occurred in the transferee district, even though defendant was at home in the NDGA); *Noetic Specialty Ins. Co. v. N. Carolina Mut. Wholesale Drug*

(continued…)

In view of these valid reasons for transfer, SRAM's argument that FOX Inc.'s motion and reply were frivolous lacks merit. Although FOX Inc. regrets and apologizes for its mistake about its PPB, even if it had previously concluded that Duluth is its PPB, FOX Inc. still had reasonable bases to move to transfer, and SRAM would still have opposed the motion.

## B.    FOX Inc.'s PPB Was Not Determinative, as SRAM Contends

Although defendant's PPB is relevant to some of the factors that courts consider in deciding a Section 1404(a) motion, defendant's PPB is not itself a factor, much less the dispositive factor (as SRAM assumes). Indeed, courts routinely transfer cases out of a defendant's home forum under Section 1404(a). *See* 15 Fed. Prac. & Proc. Juris. (Wright & Miller) § 3849 (4th ed.) ("Courts interpreting Section 1404(a), however, have given [the residence of the parties'] factor considerably less emphasis. … Courts also have transferred cases that were brought in the district where the defendant resided. … **Residence, therefore, is not a controlling factor under Section 1404(a)** if the convenience of witnesses and the interest of justice point strongly in a contrary direction.") (emphasis added).

---

*Co.*, 453 F. Supp. 3d 842, 846 (E.D. Va. 2020); *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 898–9 (E.D. Va. 2015). The Court ruled differently under a different line of cases that gives greater deference to plaintiff's choice of forum. Dkt. 30 at 14-15. FOX Inc. fully accepts the Court's ruling, but offers this point solely to rebut SRAM's allegation of frivolousness.

IV.   **SRAM's Opposition Exhibits Did Not Alter FOX Inc.'s Assessment of the "Nerve Center" Test for PPB at the Time**

FOX Inc.'s business operations and employees are spread across multiple states. With its expansion into Georgia, FOX Inc. now has significant facilities, operations and employees in both Georgia and California. FOX Inc.'s operations in Georgia are mainly its headquarters (largely legal, corporate, HR, and IT) and power vehicles manufacturing; virtually no mountain bike business occurs in Georgia. Merchant Decl. (Dkt. 31-2), ¶5. California continues to be the center of the accused mountain bike business, and where some power vehicle engineering, design and manufacturing continue to be conducted. *See id.*

Accordingly, assessment of FOX Inc.'s "nerve center" required weighing and balancing various activities in different states, which FOX Inc. did in good faith. After considering SRAM's opposition to FOX Inc.'s 1404(a) motion and exhibits, FOX Inc. continued to have a good faith belief, notwithstanding its expansion into Georgia, that Scotts Valley, California remained FOX Inc.'s PPB under the "nerve center" test. Dkt. 31-3, ¶12; Dkt. 31-1, ¶¶2-4.

SRAM argues as if Exhibits A-Z to the Hickey Declaration were all directed to FOX Inc.'s "nerve center"/PPB being in Duluth, and that FOX Inc.'s review of those exhibits would have necessarily changed FOX Inc.'s assessment of its "nerve center." SRAM is incorrect on both points. The only exception is Exhibit H, which

was discussed in detail in Section II.C above.

### A. Most of SRAM's Exhibits Were Directed to Issues Peripheral to the "Nerve Center" Assessment

Regarding Exhibits A-C to the Hickey Declaration, in which FOX Inc. identified its "Principal Office Address" as Braselton or Duluth in some (not all) Secretary of State filings, FOX Inc.'s assessment based on prevailing case law was that corporate headquarters or "principal office address" are not the same as FOX Inc.'s "nerve center" for its business operations spanning multiple states. And the Court agreed with FOX Inc. on this point. Dkt. 30, 9-10 (citing *Wylie v. Red Bull N. Am., Inc.*, 627 Fed. App'x. 755, 758 (11th Cir. 2015)).[2]

SRAM's Exhibits D, E, F, and G, which relate to terms and conditions for online sales or website use, a LinkedIn page, and FOX Factory's website, make no distinction between FOX Factory Hold Co. and FOX Inc., and at best show that FOX Inc.'s headquarters had moved to Georgia. Likewise, Exhibits J and K show that

---

[2] *See also, e.g.*, *Elite Integrated Med., LLC v. New World Commc'ns of Atlanta, Inc.*, No. 1:19-CV-5214, 2021 WL 1663444, at *6 (N.D. Ga. Apr. 28, 2021) ("Plaintiffs' heavy reliance on filings with the Georgia and Delaware Secretaries of State are not sufficient proof to establish [Defendant's] nerve center.") (citations and quotations omitted); *Schelfo v. Tricam Indus., Inc.*, No. 8:14-CV-2454, 2014 WL 12621559, at *2 (M.D. Fla. Nov. 26, 2014) (similar); *Merrimack Mut. Fire Ins. Co. v. Omega Flex, Inc.*, 569 F. Supp. 3d 68, 70 (D. Mass. 2021) (similar).

certain powered vehicles manufacturing had moved to Georgia. But notwithstanding those moves into Georgia, counsel's good faith assessment at that time was that the "nerve center" for FOX Inc. continued to be in Scotts Valley for the reasons stated above (Section II.A) and in FOX's response to the Court's Order. FOX Inc. has since corrected/withdrawn its assertion of Scotts Valley as its PPB and acknowledges Duluth as its PPB.

SRAM's Exhibits O and R-X only evidenced that FOX Inc. products are sold by third party dealers in Georgia (which has marginal, if any, relevance to the transfer issue). In sum, SRAM's alleged "mountain" of exhibits did not compel a finding that FOX Inc.'s "nerve center" is in Duluth. Nor was the Court persuaded by cited flight prices and arguments about witness inconvenience. Dkt. 30 at 17, n.7.

## V.   FOX Inc.'s Mistakes Are Not Sanctionable Conduct

### A.   Sanctions Would Require a Finding of Bad Faith or Acts "Tantamount to Contempt"

The procedural posture of these proceedings dictates the applicable standards for sanctions. Because the Court issued a *sua sponte* OSC and provided FOX Inc. an opportunity to respond, sanctions under the Court's inherent authority would require a finding that FOX Inc. acted with bad faith, and Rule 11 would require a finding that FOX Inc.'s actions were tantamount to contempt. FOX Inc. respectfully submits that its mistakes do not rise to those standards of culpability.

"A court may exercise this [inherent] power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Purchasing Power, LLC v. Bluestem Brands, Inc.,* 851 F.3d 1218, 1223 (11th Cir. 2017) (inner quotations and case citations omitted). "The key to unlocking a court's inherent power is a finding of bad faith." *Id*. (citing *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015)). This standard "narrows the range of conduct that can satisfy this higher threshold for sanctions." *Peer v. Lewis,* 606 F.3d 1306, 1314–15 (11th Cir. 2010). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).

Regarding Rule 11, court-initiated (*sua sponte*) sanctions proceedings under Rule 11(c)(1)(B) do not involve the "safe harbor" provision contained in Rule 11(c)(1)(A). *See, e.g., Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003) (and cases cited therein). "Because no safe harbor opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding, Rule 11's drafters commented on Rule 11(c)(1)(B)'s compensating protections: The initiating court must employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Id*. (inner quotations and citations omitted). The

Advisory Committee Notes also note that a party's "corrective action" following an OSC should be taken into consideration.[3] *See also Wesely v. Churchill Dev. Corp.*, 99 F.3d 1141, at *3 (6th Cir. 1996) (reversing the lower court's finding of *sua sponte* Rule 11 sanction for failure to take into account the possibility of corrective actions); *Faulkner v. Loftus*, No. 16-CV-02432, 2018 WL 11181980, at *19 (N.D. Ill. Mar. 30, 2018), aff'd, 775 F. App'x 245 (7th Cir. 2019).

### B.    FOX Inc.'s Actions Were Not in Bad Faith or "Tantamount to Contempt," and It Has Taken Corrective Actions

As explained above, FOX Inc.'s motion to transfer was not frivolous under the case law, particularly the widespread view that in a patent infringement case, the center of gravity of the accused infringing activity is a key factor for determining venue.[4] Even if FOX Inc. had earlier concluded that Duluth was its PPB, it would still have good faith, valid grounds to request a transfer based on the other facts and

---

[3] *See* Advisory Committee Notes to 1993 Amendments to Rule 11: "Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what—if any—sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred."

[4] *See, e.g., Logopaint A/S v. 3D Sport Signs SI*, 163 F. Supp. 3d 260, 266 (E.D. Pa. 2016) ("In patent infringement cases, the preferred forum is that which is the center of gravity of the accused activity. The center of gravity for such claims is in the district where the alleged infringement occurred. The center of gravity ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production. The court should consider the location of a product's development, testing, research and production and the place where marketing and sales decisions were made, rather than where limited sales activity has occurred.") (internal citations and quotation marks omitted).

legal considerations that supported a transfer, and SRAM would have opposed that motion.

As explained above, until receipt of this Court's Order, FOX Inc. had long viewed Scotts Valley as its PPB, as it had stated in various court filings over many years. FOX Inc.'s business lines, operations, executives and employees are now spread across multiple states, with recent expansion of its headquarters and Powered Vehicle Group manufacturing in Georgia. Against this history and backdrop, FOX Inc. conducted the "nerve center" test honestly and in good faith, and based on that analysis, continued to believe that FOX Inc.'s PPB was in Scotts Valley, California when we prepared the 1404(a) motion and reply. Dkt. 31-3, ¶¶4-12. That remained our understanding after Finnegan and FOX Inc. reviewed and discussed SRAM's opposition and exhibits, including the Form 8-K and bond agreement. *Id*. Our actions were not in bad faith or tantamount to contempt.

To be sure, FOX Inc. admits that it made a mistake in determining the PPB and has also taken corrective actions to address its mistakes. It was not until after receipt of this Court's order that we realized the mistake about the bond transaction (and resulting mistake about the PPB), and two weeks later, FOX Inc. took corrective action by filing its response where FOX Inc. candidly admitted and apologized for its errors in its bond agreement and PPB assessments, and for statements in its reply

14

that referred to a PPB of FOX Inc.'s bike suspension business, but which should have been phrased differently. FOX Inc. also filed a new statement with the California Secretary of State that correctly identified Duluth as the Principal Office Address. Bhattacharyya Reply Decl., Ex. F. The Court should consider these corrective actions as well, as explained above.

### C.      SRAM's Rule 11 Cases Are Inapposite

Three of the four Rule 11 cases cited by SRAM involved party-initiated Rule 11 proceedings, and thus the safe harbor and lower reasonableness standard for sanctions,[5] rather than the "akin to contempt" standard required by *Kaplan*, 331 F.3d at 1255–56, as explained above. Although *Xped LLC v. Entities Listed on Exhibit 1*, a decision from the Northern District of Illinois, involved a court-initiated OSC, the sanctioned party in that case committed fraud on the Court and acted in bad faith, in contrast to FOX Inc.'s good faith and promptly admitted mistakes. No. 21-CV-6237, 2023 WL 5748350, at *11 (N.D. Ill. Sept. 6, 2023).

## VI.    Conclusion

FOX Inc. respectfully submits that the Court should not issue sanctions based on admitted mistakes in its motion to transfer and reply.

---

[5] *Lee v. Criterion Ins. Co.*, 659 F. Supp. 813, 822 (S.D. Ga. 1987); *Brown v. Brock*, Case 1:23-cv-00492-SCJ, 2005 WL 1843266 (M.D. Ga. Aug. 3, 2005); *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019).

Dated:  April 10, 2024          Respectfully submitted,

_/s/Arpita Bhattacharyya_____

Virginia L. Carron (Ga. Bar No. 112770)
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
Tel: (404) 653-6400
Fax: (404) 653-6444
Email: virginia.carron@finnegan.com

Robert F. McCauley (admitted _pro hac vice_)
Arpita Bhattacharyya (admitted _pro hac vice_)
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, CA 94304
Tel: (650) 849-6600
Fax: (650) 849-6666
Email: robert.mccauley@finnegan.com
Email: arpita.bhattacharyya@finnegan.com

_Attorneys for Defendant FOX Factory, Inc._

**CERTIFICATE OF SERVICE AND COMPLIANCE**

Counsel for FOX Factory, Inc. hereby certifies that on March 20, 2024, the foregoing DEFENDANT FOX FACTORY, INC.'S REPLY TO SRAM'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY SANCTIONS ARE NOT APPROPRIATE was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

Pursuant to Local Rule 7.1(D), counsel for Defendant FOX Factory, Inc. certifies that the foregoing was prepared in 14-point Times New Roman font and otherwise conforms to the requirements of Local Rule 5.1.

*/s/Virginia L. Carron*
Virginia L. Carron (Ga. Bar No. 112770)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
271 17th Street, NW, Suite 1400
Atlanta, Georgia 30363
Telephone:  (404) 653-6452
Email: virginia.carron@finnegan.com

*Counsel for Defendant Fox Factory, Inc*

17